91    30
150   503
91    30
161   646
91    30
171   199|
91    30
d 28 SC   464

## Wolford et al. *versus* Morgenthal et al.

1. The deed of F., executed in 1828, conveyed certain lands in controversy to trustees, " in trust for the use and benefit of M., his wife, and her heirs for ever; that is, the children, if any, begotten by F.; and her daughter, W., is to be made equal, to be for them and their heirs for ever, after the decease of F., her present husband." The *habendum* was " for the use and benefit of the said wife and her daughter W., and the children begotten by F., if any, upon the body of said M., his wife." W. was a daughter of M. by another husband. The deed was. executed shortly after the marriage of F. and M. Five children were born to them subsequently to the date of this deed. *Held*, that the word " children" was not a word of limitation but of purchase; that effect was to be given to the deed as if W. was the lawful child of and heir both of F. and M.; that M. took a life-estate, with remainder in fee to the children as a class; that there was a vested remainder in fee in W., who was living at the time of the execution of the deed, which opened to let in the after-born children as they were respectively born.

2. A special Act of Assembly in 1846 divested the estate of W. and the children and gave it to the tenant for life. *Held*, that as they had a vested remainder in the land it was beyond legislative power to divest it in this way, and such effect could not be given to the act.

3. M. did not die until 1877. In pursuance of the above Act of 1846 a conveyance was made by the tenant for life in said year to defendants, and in ejectment for the land bought in 1877, it was contended that W., and the after-born children, were barred by the Statute of Limitations. *Held*, that the latter took the fee under the same deed that gave M. her life-estate; that they held a distinct title in succession, and had no right of possession until that succession took place; and that their right of entry or action did not, therefore, accrue until the death of M.

May 8th 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Woodward, Trunkey and Sterrett, JJ.

Error to the Court of Common Pleas of *York county:* Of May Term 1879, No. 116.

Ejectment by Edward Morgenthal and others, against Amos Wolford and others, to recover a tract of fifty-two acres of land in York county. Thomas E. Cochran, Esq., was chosen referee by the parties, under the provisions of the Act of April 9th 1868, Pamph. L. 782. The report of the referee is so able, learned and exhaustive that it is herewith incorporated in this report *in extenso.*

" The plaintiff offered in evidence an instrument of writing, under seal, executed by Frederick Morgenthal, on the 30th of April 1828. This instrument was in form an obligation, in which the obligor was held and firmly bound unto Barnet Trimmer and William Trimmer, Jr., trustees for Margaret Riley, in the sum of $6000, to be paid them, or to their certain attorney, executors or administrators, to which payment the obligor bound himself, his heirs, executors and administrators, firmly by these presents. Then followed a recital, in which it was said that, whereas, a marriage was, by God's permission, intended shortly to be had and solemnized between the above-bounden Frederick Morgenthal

[Wolford v. Morgenthal.]

and Margaret Riley, and whereas the said Frederick, in considera-
tion of the said marriage, and of the portion or fortune of the said
Margaret, had agreed, that if the said intended marriage should
take effect, and the said Margaret should happen to survive him,
and there should not be any child or children begotten between
them, nor any issue of such child or children then living, or after-
wards born alive, that she, the said Margaret Riley, should have
and receive all of the estate and effects of him, the said Frederick
Morgenthal, to and for her own proper use and benefit.  But in
case the said Margaret should survive the said Frederick, and there
be any child or children begotten between them, or any issue of
such child or children then living, or afterwards born alive, that
then, and in such case, the heirs, executors and administrators of
the said Frederick Morgenthal, should well.and truly pay, or cause
to be paid, unto the said Barnet Trimmer and William Trimmer,
or the survivor of them, his executors or administrators or assigns,
the full amount of all the money coming out of the estate of the
said Frederick, both real and personal, upon the trust.thereinafter
mentioned.  The condition of the obligation was expressed to be,
that if the said intended marriage should take place and effect,
and the said Margaret Riley should happen to survive the said Fred-
erick, and there should not be any child or children begotten be-
tween them, or any issue of any such child or children, who shall be
living at such the decease of the said Frederick, or afterwards born
alive, then and in such case, if the heirs, executors or administra-
tors of the said Frederick, shall and do immediately after such
decease, pay, or cause to be paid, to the said Margaret Riley, the
full amount of all the money arising out of the estate of the said
Frederick, both real and personal, for her own proper use and
benefit for ever, or in case the said Margaret should happen to
survive the said Frederick, and there should be any child or
children begotten between them, or any issue of such child or
children, living at the decease of said Frederick, or afterwards
born alive, then if the said heirs, executors and administrators of.
the said Frederick should pay to the said Barnet Trimmer and
William Trimmer, or the survivor of them, his heirs, &c., the full
amount of all the money arising out of the said Frederick's estate,
both real and personal, upon the trust, and to and for the intent
and purpose thereinafter mentioned, &c., to wit: in trust, that the
said trustees, their survivor, his heirs, &c., should as conveniently
might be paid to the said Margaret Riley, the said amount of all
the money arising out of said Frederick's estate, both personal and
real, to be for her use during her natural life, and after her
decease, to be divided among all and every child or children
begotten between her and the said Frederick, which should be
living at her death, and the issue which should then be living of
such child or children as should happen to die in her lifetime, such

[Wolford *v.* Morgenthal.]

issue only to take by representation of their respective parents, then the said obligation to be void, &c. To this was added, before the obligor's signature:

"'N. B.—Elizabeth Wire, my step-daughter, to get an equal share with the other children.'

"This 'instrument of writing' was acknowledged before William Caldwell, a justice of the peace, in and for York county, on the day of its date, and recorded in said county, on the 20th of May 1828, three weeks afterwards, and on the same day on which the deed or indenture next hereinafter mentioned was recorded. The reception of this instrument of writing (which is marked 'A, T, E, C,') in evidence, was objected to on behalf of defendants, who alleged that it was irrelevant and illegal evidence in this case. It was not admitted in evidence by the referee, nor taken into consideration in the decision of this case, for reasons hereinafter stated; but it is substantially recited as above given, in order that the whole case may be presented to your honorable court.

"I find, as a fact in the cause, that on the 19th day of May, A. D. 1828, John Trimmer, Jr., and Margaret his wife, signed, sealed, delivered and acknowledged before the said William Caldwell, justice of the peace as aforesaid, their indenture, wherein and whereby, in consideration of $1500 then paid to them by the same Frederick Morgenthal above-mentioned, they granted, bargained and sold to Barnet Trimmer and William Trimmer, Jr. (the same persons named in the above-in-part recited instrument of writing marked 'A, T, E, C,'), 'in trust for the use and benefit of Margaret Morgenthal and her heirs for ever, that is the children if any begotten by Frederick Morgenthal, and her daughter, Elizabeth Wire, is to be made equal, to be for them and their heirs for ever, after the decease of Frederick Morgenthal, her present husband,' a tract of land in Paradise township, described by courses, distances and adjoiners, 'containing fifty-two acres and allowances,' it being the tract of land demanded by the plaintiffs in this suit of ejectment issued in this case; 'to have and to hold the said lot of land, containing fifty-two acres and allowances, be the same more or less, hereditaments and premises hereby granted or mentioned, or intended so to be, with the appurtenances unto the said Barnet Trimmer and William Trimmer, in trust; to the only proper use, benefit and behoof of the said Barnet Trimmer and William Trimmer, for the trust aforesaid for the use and benefit of the said Margaret Morgenthal, and her daughter, Elizabeth Wire, and the children begotten by Frederick Morgenthal, if any, upon the body of the said Margaret Morgenthal, his wife,' &c.; *prout* the said indenture marked 'B, T, E, C,' given in evidence by the plaintiffs in this case, and attached to this report.

"I also find, as a fact in the cause, that Margaret Riley, named

[Wolford v. Morgenthal.]

in paper ' A, T, E, C,' became, between the day of the date of that paper and the day of the date of paper ' B, T, E, C,' the wife of the said Frederick Morgenthal, and is the same person who is called Margaret Morgenthal in said paper ' B, T, E, C.'

" I also find, as a fact in the cause, that Elizabeth Wire, mentioned in said papers A and B, was the daughter of Margaret Morgenthal, aforesaid, by a former husband, and that she released her interest in the land in dispute for a valuable consideration, during her lifetime, and is now dead.

" I also find that the plaintiffs in this suit are the children born in lawful wedlock of Frederick Morgenthal and Margaret, his wife, above named, and were respectively of the ages following, to wit: Matilda Whaler, forty-six years, Frederick Morgenthal, forty-four years, Edward Morgenthal, forty-one years, Levi Morgenthal, forty years, and Catharine Fickes, thirty-eight years, at the institution of this suit.

" I also find, as a fact in the case, that Frederick Morgenthal, named in papers A and B, died on the 29th day of April 1852, aged eighty-eight years, and that Margaret Morgenthal, his wife, died on the 16th day of March 1877, aged seventy-two years.

" I also find, as a fact in the case, that this suit was commenced on the 26th day of July 1877.

" I also find, as a fact in the case, that an Act of the General Assembly of the state of Pennsylvania was passed, approved and became a law of this state, on the 21st day of April 1846, entitled ' An act relative to certain real estate,' by the 19th section of which (Pamph. L. 1846, p. 440), after reciting that John Trimmer, Jr., and wife had, by an indenture, dated May 19th 1828, sold and conveyed a tract of land containing fifty acres and allowance to Barnet Trimmer and William Trimmer, in trust for the uses and benefit of Margaret Morgenthal and her heirs for ever ; that $1500, the consideration of said land, had been paid by Frederick Morgenthal, the husband of Margaret, to said John Trimmer, at and before the ensealing and delivery of the same deed, and that the said Margaret and Frederick were desirous to have the legal title to the said real estate vested in the said Margaret, so that she might sell and convey the same for a valuable consideration, the said Barnet and William, or the survivor of them, if he or they were willing to convey the said real estate, were thereby authorized and empowered to make a deed to the said Margaret, vesting in her, in fee-simple, the said real estate ; and upon the said deed being made as aforesaid, the legal as well as equitable estate should be in the said Margaret for all purposes whatsoever.

" I find it to be also a fact in the cause, that the said Barnet and William Trimmer made their indenture, sealed and dated the 17th day of June 1846, in which, in consideration of the sum of $1 paid to them by the said Margaret Morgenthal, and ' by virtue

10 Norris—3

of' the Act of General Assembly aforesaid, and reciting in full the authority conferred upon them to convey the said real estate to her, they granted, bargained and sold the said land in dispute in this case to the said Margaret Morgenthal and to her heirs and assigns for ever. This deed was acknowledged by the grantors on the day of its date, before the same William Caldwell, a justice of the peace as aforesaid, but was not recorded.

" I find it also to be a fact in the case, that the said Frederick Morgenthal and Margaret, his wife, made their indenture, sealed and dated the 31st day of July 1846, wherein they granted, bargained and sold the tract of land in dispute, for the consideration of $1500, to George Oberlin, his heirs and assigns, to the only proper use and behoof of the said George Oberlin, his heirs and assigns for ever. Margaret Morgenthal signed a receipt at the foot of the conveyance for the purchase-money. The deed was duly acknowledged on the day of its date, before James Adams, a justice of the peace, but has not been recorded.

" I find it also to be a fact in the case, that the defendants are the present owners of the title, right, claim or demand of the said George Oberlin to the land in dispute, by virtue of sundry unrecorded mesne conveyances ; and that the said George Oberlin and those thus holding under him have been in possession of the land in dispute ever since said 31st day of July 1846, and that the defendants are now in possession of said land.

" I find also as a fact in the case that valuable improvements were made on those parts of the land in dispute in possession of Amos Wolford and Cornelius Spangler, two of the defendants, by themselves or those whose title they have, since the sale by Frederick Morgenthal and Margaret his wife to George Oberlin ; but there is no evidence that these improvements were made with the encouragement, or at the instance of the plaintiffs in this case.

" The contention of the plaintiffs is,

" 1st. That paper A, termed by them an 'ante-nuptial contract,' and paper B, the deed from John Trimmer and wife to Barnet Trimmer and William Trimmer, Jr., must be construed together, as being *in pari materia ;* but that whether so construed together, or paper B construed by its own terms and provisions only, the estate created was an estate for life in the land in dispute, to Margeret Morgenthal, with remainder to the children of herself and Frederick Morgenthal, of whom a daughter by a former marriage, Elizabeth Wire, then living, was to be treated as one, in fee.

" 2d. That the 19th section of the Act of April 21st 1846, Pamph. L. 1846, page 440, authorizing the trustees to sell said real estate, and in pursuance of which they conveyed the land in dispute to Margaret Morgenthal in fee, was unconstitutional and void, 1st, as impairing the obligation of a contract ; 2d, as violating art. 9, sect. 9, of the constitution of the state.

[Wolford *v.* Morgenthal.]

" 3d. That the Statute of Limitations did not begin to run against the remainder-men in this case until the life-estate of Margaret Morgenthal was determined by her death.

" 4th. That plaintiffs are not estopped by reason of improvements made upon the land by the defendants, or those whose title they have.

" The contention of the defendants is, ·

" 1st. That paper A, termed an 'ante-nuptial contract,' by the plaintiffs, ought not to be taken into consideration in the construction of paper B (the deed from John Trimmer, Jr., and wife, to Barnet Trimmer and William Trimmer, Jr., in trust), as being *in pari materia.*

" 2d. That said deed (paper B) should be construed either, as, 1st, creating an estate tail in Margaret Morgenthal and the children begotten upon her body by Frederick Morgenthal, including her daughter Elizabeth Wire; or, 2d, as creating a tenancy in common between the said Margaret Morgenthal, the children of herself and her husband Frederick Morgenthal and the said Elizabeth Wire, in fee-simple in the land in dispute.

" 3d. That the 19th 'section of the Act of April 21st 1846, above referred to, was constitutional and valid, and conferred a valid power upon the said Barnet Trimmer and William Trimmer, Jr., to convey the land in dispute to said Margaret Morgenthal in fee-simple, which was effectually executed by their conveyance to her of the land in dispute on the 17th day of June 1846, and that her title to the same became legally vested in George Oberlin, and from him passed to the defendants in this suit.

" 4th. That even if the said Act of Assembly is unconstitutional the adverse possession of the land in dispute during the life of Margaret Morgenthal, the tenant in tail for twenty-one years, would bar recovery by the plaintiffs, and the possession would have the same effect against the plaintiffs, if the estate created by the deed of trust was an estate in common in fee-simple, in Margaret Morgenthal, the children of herself and Frederick Morgenthal, and Elizabeth Wire, her daughter.

" 5th. That the plaintiffs are estopped from recovering the land in dispute in this case by the improvements made thereon by the defendants and those under whom they claim, while in possession, there being no evidence that the plaintiffs gave notice of their title, or that they claimed the land.

" The undersigned is of the opinion that paper A, being the obligation given by Frederick Morgenthal to Barnet Trimmer and William Trimmer, before the marriage of Frederick Morgenthal and Margaret, should not be construed together with paper B, the deed from John Trimmer, Jr., and wife, in trust to said Barnet and William, made after the marriage of said Frederick and Margaret. They are not contemporaneous in date or in fact. The

[Wolford *v.* Morgenthal.]

deed does not refer to the obligation. Although the obligation is given in consideration of a contemplated marriage, or at least recites the expectation of marriage in the preamble to the condition, it makes no conveyance of real estate, which indeed Frederick Morgenthal did not then own, nor does it purport to provide for the conveyance of any real estate to Margaret Morgenthal after his death. It speaks only of 'money' which she is to receive after his death, should certain conditions then exist, from his heirs, executors or administrators, and it is possible that her right then to receive that would depend upon whether or not there were anything left after the payment of his debts. The plaintiffs could not recover under paper A alone. In fact they gave paper B in evidence; it was essential to the maintenance of their case; and I apprehend that it must be construed by its own terms, without reference or regard to any *independent* instrument.

" The—probably the decisive—question in the cause, is, what estate did the deed B, from John Trimmer, Jr. and wife, to Barnet Trimmer and William Trimmer, Jr., in trust, vest in Margaret Morgenthal, 'and her heirs for ever, that is the children, if any, begotten by Frederick Morgenthal, and her daughter Elizabeth Wire, is to be made equal, to be for them and their heirs for ever, after the decease of Frederick Morgenthal, her present husband.' The legal estate was at once vested in Barnet and William Trimmer as trustees. The deed may have created an estate in trust for Frederick Morgenthal for life, as he paid the consideration, and the limitations to Margaret, the children, and Elizabeth Wire, are expressed to be to them and their heirs for ever after his decease. Had the declaration in trust stopped with the clause, 'to the use and benefit of Margaret Morgenthal and her heirs for ever,' it would have created a fee-simple in her. These words are followed immediately by the clause, 'that is, the children, if any, begotten by Frederick Morgenthal, and her daughter, Elizabeth Wire, is to be made equal.' The *habendum* expresses it, 'for the use and benefit of the said Margaret Morgenthal, and her daughter, Elizabeth Wire, and the children begotten by Frederick Morgenthal, if any, upon the body of the said Margaret Morgenthal, his wife,' which it declares to be 'the trust aforesaid.' In Wager *v.* Wager, 1 S. & R. 373, the words 'heirs and children' were used together, and the estate was decided to be an estate for life in the parents, and a vested remainder in fee in the children born at time of the execution of the deed, which opened to let in after-born children, as their births respectively took place. In this case there were no children born to Frederick Morgenthal and Margaret his wife, at the time of the execution of the deed; but Elizabeth Wire was born and living, and being 'made equal,' in the language of the deed, the result would be the same as in Wager *v.* Wager. In that case, however, the limitation was by the *habendum,* to Philip Wager and

Hannah, his wife, during the term of their joint lives and the life of the survivors of them, and from and immediately after the decease of the survivors of them, to and for the use, benefit and behoof of the legally begotten heirs of Hannah, &c. There is no such *express* limitation for life to Margaret Morgenthal in the deed in this case. What is then the effect of 'the very general terms,' which do not 'very clearly express' whether she should take the whole during her life, or jointly with the children? The word children in a deed is a word of purchase, and ordinarily indicates the commencement of a new line of succession. Its use limits the meaning of the word 'heirs,' and it comes in as a *designatio personarum*—as the grantor's definition of what he means by heirs; and as the late Chief Justice WOODWARD asked in Huss v. Stephens, 1 P. F. Smith 288–9, 'where is there room to doubt either upon reason or authority, that we ought to construe heirs a word of purchase, and thus serve the intent?' In Coursey v. Davis, 10 Wright 25, the limitation in the deed was to 'Mildred Ann Davis and her children exclusively, and their heirs and assigns.' The Supreme Court said that 'the rule in Wild's Case, by which lands are devised to a person and his children, and he has no child at the time of the devise, the parent takes an estate tail, has no application to the present case (Coursey v. Davis), in which there was a child or children of the mother living at the time of the execution of the deed. The word children is therefore not a word of limitation but of purchase, and the question is what is the estate taken by the mother and children respectively?' In this case I apprehend that the fact that Elizabeth Wire, a daughter of Margaret Morgenthal, was living at the time of the date of the conveyance, and was 'to be made equal'—that is, as I understand the untechnical term to be, treated and regarded as if she was a child of Frederick and Margaret—has the same effect as the fact that Mrs. Davis had children living at the execution of the deed in Coursey v. Davis, had in tha case, in which Mrs. Davis was decided to have a life-estate, with remainder to her children as a class. The cases of White v. Williamson, 2 Grant 249; Cote v. Von Bonnhorst, 5 Wright 243; Curtis v. Longstreth, 8 Id. 297, and List v. Rodney, 2 Norris 483, support the same view; and Shirlock v. Shirlock, 5 Barr 367, which would indicate that Margaret Morgenthal might have taken an estate in fee in land as tenant in common with her children is treated as overruled in this report in both Coursey v. Davis and List v. Rodney. In Melsheimer v. Gross, 8 P. F. Smith 412, Judge STRONG, delivering the opinion of the Supreme Court, said, 'children, issue of their or either of their bodies, are necessarily words of purchase in a deed.' The case of Rogers v. Smith, 4 Barr 93, as interpreted in Jones's Appeal, 7 P. F. Smith 369, is authority for the position, that the words 'heirs-at-law then in existence' may mean *the children of the marriage,* and in such

[Wolford *v.* Morgenthal.]

case the children take the remainder, in the event of the wife's death as purchasers, and have an estate under the deed of which they cannot be despoiled. I conclude, as the result of my examination of the cases referred to, and many other authorities to which my attention was called by the counsel for the plaintiffs and defendants respectively, during the copious and able arguments which they presented, that the deed marked B, from John Trimmer, Jr., and wife, to Barnet and William Trimmer, Jr., in trust, as already stated, created an estate for life in Margaret Morgenthal, and an estate in remainder in the children of herself and Frederick Morgenthal, including her daughter, Elizabeth Wire, and they took as purchasers and not by descent.

" During the argument of the case before the referee, Mr. Blackford, as counsel for the personal representatives of Frederick L. Asper, deceased, who during his lifetime went into possession of part of the land in dispute, by virtue of sundry mesne conveyances, from George Oberlin, after Oberlin's purchase from Frederick Morgenthal and wife, and also in his lifetime, sold the same by deed containing a covenant of general warranty, to Ananias Wolford, one of the defendants, raised the point that the deed B from John Trimmer, Jr., and wife to Barnet and William Trimmer, Jr., purporting to be a conveyance to them as trustees, as the limitations to Margaret Morgenthal and the children were only to take effect after the death of Frederick Morgenthal, was a testamentary disposition, and, therefore, revocable by him, and actually revoked by the deed of himself and Margaret, his wife, to George Oberlin in fee. Turner *v.* Scott, 1 P. F. Smith 126; and Frederick's Appeal, 2 Id. 340, were cited to sustain this position. It is, however, pertinent to remark that Frederick Morganthal was not a party to deed B, and the estate was put in trust by that deed, creating an immediate legal estate in the trustees. It was decided in Ritter's Appeal, 9 P. F. Smith 9, that where land was conveyed in trust to be farmed, and the proceeds to be paid to the grantor during life, the land to be sold after his death, and the proceeds of sale to be distributed as directed in the deed, it was not revocable nor testamentary. I cannot, therefore, sustain the point taken on behalf of Frederick L. Asper's executor.

" The next question that arises relates to the 19th section of the Act of April 21st 1846. Was that section constitutional, and did it avail to authorize Barnet and William Trimmer, Jr., to effectually convey the trust estate to Margaret Morgenthal, the *cestui que trust* for life in fee-simple; and thus to destroy the estates in remainder of the children? If I could have concurred with the counsel for the defendants, in the opinion that the estate created by the deed of trust was an estate tail in her, or an estate in common to her and the children of her marriage with Frederick Morganthal, including Elizabeth Wire, I might also agree with

[Wolford *v*. Morgenthal.]

them in holding this Act of Assembly to be constitutional. It has been intimated in early cases, that it did not fall within the province of inferior tribunals, even of a Court of Common Pleas, to declare a statute of the legislature to be unconstitutional or void; but in Jones's Appeal, 7 P. F. Smith 369, already referred to, a master in chancery did so, and although his action was overruled by the supreme court, it was not rebuked as having been an unauthorized assumption of power, or an indecorous attempt to overrule a co-ordinate branch of the government. In declaring the act constitutional in that case, the Supreme Court in effect admits that an act which would assume to confer an authority on a wife to divest the estate of her heirs, would be contrary to common right and Magna Charta. In Rogers *v*. Smith, 4 Barr 93, an Act of Assembly which assumed to give a person who had only a life-estate authority to convey in fee, was not supported. The court said: 'The children whose rights are materially affected are not before us except indirectly, nor were they represented before the legislature. They are not concluded, for although their rights are not expressly saved, the act binds none but the parties.' If this were a case of authorized conversion of real estate, the remainder-men being minors, and the principal of the fund raised by the sale preserved for their benefit, the constitutionality of the Act of Assembly might be supported on the principle of Norris *v*. Clymer, 2 Barr 285, and other cases of that class. Judge SHARS-WOOD says, in Palairet's Appeal, 17 P. F. Smith 479, 'The cases in which such conversion may be authorized, seem well enumerated in Mr. Price's valuable act of April 18th 1853, Pamph. L. 503.' It is characteristic of that act, that it carefully guards the interests of all parties concerned, and preserves to them the same interest in the proceeds of the sale, which they had in the land itself. The Act of 1846, however, strikes down the estate of the persons in remainder absolutely, and takes their property to make an estate in fee for the tenant for life. It comes under the principles and decisions in Ervine's Appeal, 4 Harris 246; Bumburger *v*. Clippinger, 5 W. & S. 311; Norman *v*. Heist, 5 Id. 171; and without citing others of the same class, largely referred to in Palairet's Appeal, *supra;* Schafer *v*. Eneu, 4 P. F. Smith 304, in which an estate was devised to a woman and her children, and it was contended that children, adopted in conformity to the Act of May 4th 1855, sect. 7, Pamph. L. 431, were entitled under the devise. Judge STRONG said, 'If the act were construed as it is claimed by the plaintiff in error, as applied to the present case, it would work a result which it is not in the power of the legislature to effect. The will of James Eneu took effect in 1851. It gave a life-estate in the rent to Mrs. Clark, with a contingent remainder to her children, and the residue of the estate to his children, naming them, in fee. The children thus named (and the children

[Wolford *v.* Morgenthal.]

of such as are deceased) are the defendants in error. They had a vested interest in the rent when the Act of 1855 was passed. It was not in the power of the legislature to take away that vested interest, and give it to such person as Mrs. Clark might adopt.' Believing that the children took by purchase, and not by descent, under the deed of trust in this case, and they had a vested remainder in the land in dispute, I cannot believe that the legislature had a right to authorize the trustees to violate their trust, and convey the land to the tenant in life in fee. I must, therefore, hold the 19th section of the Act of April 21st 1846, Pamph. L. 440, to be unconstitutional and void as to any effect or operation upon the land in dispute, and the estate of the plaintiffs in this case therein.

" It is, however, contended by the defendants that though the Act of Assembly be unconstitutional, yet they and those under whom they claim have been in actual, visible, uninterrupted, notorious and hostile possession of the land in dispute since the 31st day of July 1846, when it was conveyed by Frederick Morgenthal and wife to George Oberlin, and that the bar of the Statute of Limitations defeats the right of the plaintiffs to 'recover in this suit. It was unquestionably ruled in Baldridge *v.* McFarland, 2 Casey 338, that an adverse possession of twenty-one years during the life of the tenant in tail, will bar a recovery by the issue in tail, and it would no doubt bar the right of entry of tenants in common, who, after removal of disabilities provided by the statute, had permitted the defendants to remain in possession without entry or suit. It was also intimated, though the case was not decided on that ground, that in the case of a contingent remainder, the extinguishment of a life-estate, by adverse possession of twenty-one years, destroys the remainder that depends on it. There was no trust in that case, which would protect contingent remainders during the term for life, and in that respect Baldridge *v.* McFarland differs from the case at bar. In Smilie *v.* Biffle, 2 Barr 52, it was decided that where a purchaser from several trustees for A. for life, remainder in trust to sell and pay to B. entered under his deed, the Statute of Limitations commenced to run against the whole estate, and twenty-one years' adverse possession bars as well the trustees as the *cestui que trust*, tenant for life, and those in remainder. There the trust continued to be active as well after the death as during the life of the life-tenant, for the trustees were after his death to convert and distribute. Smilie *v.* Biffle, as well as Crow *v.* Kightlinger, 1 Casey 343 ; Marple *v.* Myers, 2 Jones 122 ; and Miltenberger *v.* Croyle, 3 Casey 170, are all referred to by Mr. Price in his Treatise on Liens and Limitations, pages 124–25, where he says, ' From the preceding decisions, it becomes important carefully to distinguish when, under limitations, trusts expire ; for it seems, since

[Wolford v. Morgenthal.]

the estate of the trustee and *cestui que trust* are one, if the trust ends with the life of *cestui que trust*, the case is to be considered as regards those in remainder or reversion as that of an absolute limitation for life, with a remainder over; in which case, the latter would have twenty-one years from the time his rights of entry accrued before he could be barred by the Statute of Limitations; whereas, if the trustees held for the remainder-men also, adverse possession commenced against the trustee would run against the successive *cestui que trust*.' The same writer on p. 129 of his Treatise, says: 'Every *new* right of entry that accrues confers an additional period, within which it may be exercised: Hawk *v.* Jones, 12 Harris 127, 128; Hunt *v.* Bowine, 1 Salk. 339. During the continuance of the particular precedent estate, the statute can have no effect upon the expectant estate, because there is no right of entry for it: Id.' The act does not run against remainder-men till the preceding estate is ended: Jackson *v.* Schoomaker, 4 Johns. 398; Jackson *v.* Sellick, 8 Id. 263; Hall *v.* Vandegrift, 3 Binn. 374. And if the preceding estate be for the life of A., who incurs a forfeiture, yet the remainder-man has twenty-one years from the death of A. to bring his ejectment: Lielia *v.* Airey, 1 Ves. 278; *vide* Taylor *v.* Horde, 1 Burr. 60; Commonplace-Book of Chief Justice TILGHMAN. What is said, therefore, in Baldridge *v.* McFarland, 2 Casey 339, would seem to require further consideration, to wit: 'If the principle of Findley *v.* Riddle, 3 Binn. 139, Stump *v.* Findlay, 2 Rawle 168, rules this case, then it is such a life-estate, and remainder, and then it follows that the extinguishment of the life-estate, by adverse possession of twenty-one years, destroyed the remainder that depended on it.' This would be to give to the possession adverse to the tenant for life, the effect of a feoffment by him, or of a common recovery suffered by him, instead of that of an innocent conveyance by deed or will, under the Statute of Uses; to mere supineness the effect of a disseisin by wrong, or the high assurance by matter of record and entry made. It would be to visit upon him in remainder a penalty without his own default, and destroy the rule that he has twenty-one years to enter after his right or title 'first descended or accrued.'

"It is unnecessary, and would be 'inconveniently prolix' to pursue this subject further by reference to cases, or text-books, where the estate both for life and in remainder is legal. In the case in hand, there is a trust-estate, and the real question seems to be whether or not the trustees held for the remainder-men, as well as for the tenant or tenants for life. Was the estate all in trust, or was it in trust for the tenants for life, and an executed legal estate in the children and Elizabeth Wire at the death of Margaret Morgenthal? The trustees had no active duties to perform after the death of Margaret Morgenthal, and the estate became a dry trust as to them, and an executed legal estate in the

[Wolford *v.* Morgenthal.]

children. Had the limitation in the deed been to her and her *heirs*, then under the principle of Steacy *v.* Rice, 3 Casey 75, it would have become a life estate in Margaret Morgenthal at the death of her husband, and a fee in her heirs taking by descent, and under the rule in Shelley's Case, or without that, as contended by Judge LOWRIE in'Whichcote *v.* Lyle's Executors, 4 Casey 73, it would have become an executed estate in fee in Margaret Morgenthal, and her conveyance would have barred her heirs. In our case, however, we have *children* taking by *purchase*, and a trust which ended at least at the death of Margaret Morgenthal, until when they had no right of entry, and the Statute of Limitations did not begin to run against them. Smilie *v.* Biffle, *supra*, is affirmed in Maus *v.* Maus, 30 P. F. Smith 194; but in that case it was decided that the Statute of Limitations commenced to run against the remainder-men only at the death of the life-tenant. The Statute of Limitations, therefore, does not, in my judgment, interpose a bar to the recovery of the land in dispute by the plaintiffs in this suit.

" The defendants, however, further contend, that the plaintiffs are estopped from recovering in this case by standing by and permitting the defendants to make valuable improvements on the land without notice of their title, or warning to cease. It is pertinent to remark that the deed of trust, on which the plaintiff's title was founded, was placed on record on the day after its execution and delivery. The Act of 1846 contained a reference to that deed— the deed of Barnet and William Trimmer to Margaret Morgenthal recited the Act of Assembly *in hæc verba*, and the deed from Frederick Morgenthal and wife to George Oberlin recited in part the deed from B. and W. Trimmer to Margaret Morgenthal. Thus notice came to the defendants in the direct line of their title. It is not alleged—certainly not proved—that the plaintiffs gave the defendants any active encouragement to make improvements, or disclaimed their own title. In Knouff *v.* Thompson, 4 Harris 357, Judge CHAMBERS, in delivering the opinion of the Supreme Court, said : " The party who has placed his written title on record has given the notice which every person is bound to know and respect. The law does not require him to go further. But if he speaks or acts it must be consistent with his recorded title. The law distinguishes between silence and encouragement. While silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad or doubtful title would be a positive fraud that should bar and estop the party, the author of that encouragement and deception, from disturbing the title of the person whom he misled, by claim of title in himself.

" The distinction between the omission to give notice and encouragement by positive acts, is recognised and assumed by Justice COULTER in 7 Barr 233, and by C. J. GIBSON in Alexander

[Wolford v. Morgenthal.]

v. Kerr, 2 Rawle 89. It is this principle that distinguishes the cases herein referred to, and applicable to this case, from those of Hamilton v. Hamilton, 4 Barr 193 ; Pittsburgh v. Scott, 1 Id. 317 ; and McKellip v. McIlhenny, 4 Watts 323.

" On a full examination of this case, I am led to the conclusion that the plaintiffs are entitled to recover from the defendants, the undivided five-sixth parts of the land in dispute."

The defendants filed the following exceptions to the report of the referee.

1. The referee erred in holding that deed "B," in which the trust was not to take effect until after the death of Frederick Morgenthal, was not a testamentary disposition, and therefore revocable by him.

2. In construing said deed "B," either as 1st, not creating an estate-tail in Margaret Morgenthal ; 2d, as not creating a tenancy in common in fee-simple in the said Margaret, and the children of herself and her husband Frederick Morgenthal, and Elizabeth Wire, in the land in dispute.

3. In holding that deed "B," "created an estate for life in Margaret Morgenthal, an estate in remainder in the children of herself and Frederick Morgenthal, including her daughter Elizabeth Wire, and that they took as purchasers and not by descent."

4. In holding that the plaintiff's cause of action was not barred by the Statute of Limitations.

5. In holding that the 19th section of the Act of Assembly of 21st of April 1846, relating to the land in dispute, was unconstitutional and void.

6. In holding that the said trustees, by virtue of deed "B" were trustees for Margaret Morgenthal alone, and not also for the children of herself and Frederick Morgenthal, including Elizabeth Wire.

7. In holding that the deed of said trustees to Margaret dated the 17th day of June 1846 (" C"), and the deed of said Margaret and her husband to George Oberlin, dated the 31st day of July 1846, consideration $1500, did not vest in the said George Oberlin, in the land in dispute, an absolute estate in fee-simple ; and that the plaintiff's remedy is against the defendants, and not against said trustees.

8. In holding that the plaintiffs are not estopped from recovering in this case by standing by and permitting the defendants to make valuable improvements on the land in dispute, without notice of their title or warning to cease.

9. In finding in favor of the plaintiffs, and not in favor of the defendants.

The court, without filing an opinion, dismissed the exceptions, confirmed the report and entered judgment thereon.

[Wolford *v.* Morgenthal.]

This action was assigned for error by defendants, who took this writ.

*Edward W. Spangler, John Blackford* and *John Gibson,* for plaintiffs in error.—No interest was to vest in any one but Frederick Morgenthal until after his death. Whatever be the form of the instrument, if it vests no present interest, but only directs what is to be done after the death of the maker, it is testamentary: Turner *v.* Scott, 1 P. F. Smith 126; Frederick's Appeal, 2 Id. 338; Frew *v.* Clark, 30 Id. 178; Patterson *v.* English, 21 Id. 458; Rowan's Appeal, 1 Casey 293; Rose *v.* Quick, 6 Id. 225; Scott *v.* Scott, 20 P. F. Smith 244.

The gift here being limited *immediately* to children of the body, who at the time of the grant were not in *esse,* this case quadrates with the rule in Wild's Case, "by which where lands are devised to a person and his children, and he has no child at the time of the devise, the parent takes an estate tail:" Taylor *v.* Taylor, 13 P. F. Smith 488; Haldeman *v.* Haldeman, 4 Wright 35; Findley *v.* Riddle, 3 Binn. 155; Clark *v.* Baker, 3 S. & R. 477; Wheatland *v.* Dodge, 10 Met. 502, 504; Nightingale *v.* Burrell, 15 Pick. 104, 114; Parkman *v.* Bowdoin, 1 Sumner 359; Scott *v.* Scott, 15 Sim. 47; Snowball *v.* Procter, 2 Younge & Coll. 478.

If Margaret Morgenthal was a tenant in tail, then the twenty-one years' adverse possession will bar a recovery by the issue in tail, the defendants in error: Baldridge *v.* McFarland, 2 Casey 338; Smilie *v.* Biffle, 2 Barr 52; Maus *v.* Maus, 30 P. F. Smith 203; Dikeman *v.* Parrish, 6 Barr 211; Scott *v.* Gallagher, 14 S. & R. 332; Mead *v.* Leffingwell, 2 Norris 187; Williams on Real Property 152, and note; Dow *v.* Warren, 6 Mass. 328; Tiernan et al. *v.* Roland and Blackstone, 3 Harris 440; Mercer *v.* Watson, 1 Watts 330; Stockwell *v.* Robinson, 1 Barr 477; Price on Lim. 124, *et seq.*

The trustees were trustees for all; and the same principle applies to the adverse possession against a trustee and a *cestui que trust:* Smilie *v.* Biffle, 2 Barr 52; Maus *v.* Maus, 30 P. F. Smith 203; Williams on Real Prop. 152, and note; Allen et ux. *v.* Henderson, 13 Wright 333. The rule in Shelley's Case applies to equitable as well as legal estates: Williams on Real Prop. 16, and note; Allen et ux. *v.* Henderson, *supra*; Steacy *v.* Rice, 3 Casey 75; Jones's Appeal, 7 P. F. Smith 369.

If all were tenants in common, then the right of action accrued to all upon the death of Frederick Morgenthal in 1852. The youngest of the defendants in error became of age in 1860, and had ten years after her disability was removed to bring her action, to wit: in 1870. As her right of action was barred after 1870, those who are older are likewise concluded: Purd. Dig. 928; Henry et al. *v.* Carson, 9 P. F. Smith 297; Weddle *v.* Robertson, 6 Watts

486; Hunt *v.* Wall et al., 25 P. F. Smith 413; Pratt *v.* Eby, 17 Id. 396; Lenhart et al. *v.* Ream, 24 Id. 59; Mercer *v.* Watson, 1 Watts 330; Mead *v.* Leffingwell, 2 Norris 187.

The plaintiffs in error, and their immediate predecessors, have occupied this land adversely since 1846. Ignorant of any hostile claim, and under the belief that their right of possession and ownership was unassailable, they made valuable improvements thereon, quadrupling it in value. This may or may not amount to an estoppel; however, it does show on which side are the equities in this case.

*J. W. Latimer* and *George W. McElroy*, for defendants in error, followed the line of argument in the report of the referee, with a reference to the authorities therein cited.

Mr. Justice MERCUR delivered the opinion of the court, June 23d 1879.

The important question to determine is, what estate did Margaret Morgenthal take by virtue of the deed of 29th May 1828? In consideration of $1500 paid by Frederick Morgenthal, it conveyed the land in controversy to trustees named, "in trust for the use and benefit of Margaret Morgenthal and her heirs for ever, that is, the children, if any, begotten by Frederick Morgenthal; and her daughter, Elizabeth Wire, is to be made equal, to be for them and their heirs for ever, after the decease of Frederick Morgenthal, her present husband." The *habendum* was "for the use and benefit of the said Margaret Morgenthal and her daughter, Elizabeth Wire, and the children begotten by Frederick Morgenthal, if any, upon the body of the said Margaret Morgenthal, his wife."

Elizabeth Wire was a daughter of Margaret by a former marriage, and this deed was executed soon after the marriage between the latter and Frederick. Five children were born unto Frederick and Margaret, after the date of the deed, and they are the defendants in error. Frederick died in 1852 and Margaret in 1877. This action of ejectment was brought within a few months after the death of Margaret.

As Elizabeth Wire was "to be made equal" with the children thereafter to be born, like effect is to be given to the deed, as if Elizabeth had been the lawful child and heir of both Frederick and Margaret. The rule applicable where a deed is made to persons and their children, when they have no child or children living at the time of its execution, does not apply to this case. The same estate vested in Elizabeth as if she had been begotten in lawful wedlock, by Frederick upon the body of Margaret. It therefore follows, that the word children is not a word of limitation but of purchase: Melsheimer *v.* Gross, 8 P. F. Smith 412. What then

[Wolford *v.* Morgenthal.]

is the estate taken by Margaret, and by the children respectively, including Elizabeth? The answer is, the mother took a life-estate, with remainder in fee to the children as a class. It was a vested remainder in fee in Elizabeth, who was living at the time of the execution of the deed, and opened to let in the after-born children, as their births respectively took place: Wager et al. *v.* Wager et al., 1 S. & R. 374; White *v.* Williamson, 2 Grant 249; Haskins *v.* Tate, 1 Casey 249; Gernet *v.* Lynn, 7 Id. 94; Coursey *v.* Davis, 10 Wright 25.

The Act of 21st April 1846, did not preserve to the persons entitled in remainder the same interest in the proceeds of the sale which they had in the land itself, but struck down their estate and gave it to the tenant for life in fee. Holding as they did a vested remainder in the land, it was beyond legislative power to divest it in that manner, and such effect cannot be given to the act: Norman *v.* Heist, 5 W. & S. 171; Bumberger *v.* Clippinger, 5 Id. 311; Shaffer *v.* Eneu, 4 P. F. Smith 304; Palairet's Appeal, 17 Id. 479.

The remaining question is whether the right of the defendants in error was barred by the Statute of Limitations? If it began to run against them during the life of Margaret their title was barred, otherwise not. They did not derive title from her. They took the fee under and by virtue of the same deed that gave her a life-estate. They held a distinct title in succession, and had no right of possession until that succession took effect. They were not precluded from sustaining an action, during the life of Margaret, to recover possession by reason of their minority. They labored under no personal disability. Regardless of minority or coverture, their right of entry or of action did not accrue until her death. The cases of Hunt *v.* Wall, 25 P. F. Smith 413, and Hogg et al. *v.* Ashman et al., 2 Norris 80, are not applicable. They rest on personal disability. No such obstacle existed in the present case. Nor did the statute begin to run against them as heirs of Margaret during her life, as in Maus *v.* Maus, 30 P. F. Smith 194. They did not take as heirs but as purchasers. The authority of Baldridge *v.* McFarland does not control this case. There the tenant in tail might have barred the remainder, and it was said the freehold merged in the inheritance, and the two were united and executed in possession in the ancestor and formed one estate of inheritance. Therefore it was held that an adverse possession during the life of the tenant in tail would bar a recovery by the issue in tail. Here there was no merger. The two estates were not united. They were separate and distinct. The life-tenant could not bar the vested remainder created by the deed; nor had she any estate to transmit to her heirs. The court committed no error in confirming the able report of the referee and in entering judgment thereon.                    Judgment affirmed.